UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | 1:14-cv-00248-SEB-DKL |
| vs. | ) ) | |
| DAVID  WILLIAMS, ANTHONY  VAN DE VENTER, JEANETTE  VAN DE VENTER, | ) ) ) ) | |
| Defendants. | ) | |

## ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT

This matter comes before us on cross Motions for Summary Judgment filed by Defendants Anthony and Jeanette Van De Venter [Dkt. No. 50] and Plaintiff American Family Mutual Insurance Company [Dkt. No. 47]. The motions are fully briefed, including an opposition to American Family's motion filed by Defendant David Williams.[1] For the following reasons we GRANT Defendants Anthony and Jeanette Van De Venter's Motion for Summary Judgment and DENY Plaintiff American Mutual Insurance Company's Motion for Summary Judgment.

### Background and Facts

The Plaintiff in this case, American Family Mutual Insurance Company ("American Family") seeks a declaratory judgment that an insurance claim made by Anthony and

---

[1] Mr. Williams' brief echoes the opposition filed by the Van De Venters. [*See generally* Dkt. No. 58.]

Jeanette Van De Venter (the "Van De Venters") is outside the scope of their homeowner's insurance policy and American Family owes no duty to defend or duty to indemnify the defendants.  On October 23, 2012, David Williams, a houseguest of the Van De Venters, was injured when he took the Van De Venters' Labrador, Emma, into the Van De Venters' backyard on a leash.  The Van De Venters seek insurance coverage for Mr. Williams's injuries and demand that American Family provide them with a defense in a state court lawsuit against them filed by Mr. Williams.

**A.    Mr. Williams Was Injured When Taking Emma Into the Backyard on a Leash.**

Mr. Williams and the Van De Venters have been friends for many years.  [A. Van De Venter Dep. at 45, 48.]  Mr. Williams lived in San Diego, California when the Van De Venters invited him to visit them at their home located at 6370 May Road, Bloomington, Indiana.  Mr. Williams arrived at the Van De Venters home for a five-day visit on October 20, 2012.  [Williams Dep. at 93.]  At the time of Mr. Williams's visit, the Van De Venters owned a black Labrador, Emma.  [J. Van De Venter at 14, 52.]

The Van De Venters had to be away from home for their jobs on October 23, 2012 during Mr. Williams' visit.  They offered Mr. Williams their vehicle in order to get into town and to the gym.  [Williams Dep. at 119.]  Mr. Williams declined the offer and chose to stay at the Van De Venters' home.  [*Id.*]  The Van De Venters told Mr. Williams that Emma would be fine staying inside while they were working, but that she might signal her need to go outside by ringing a bell by the front door.  [J. Van De Venter Dep. at 39.]  Typically during colder weather, Emma was left alone in the home, either enclosed in the

laundry room or free to roam the home.  [A. Van De Venter Dep. at 29.]  According to Mr. Williams, Mr. Van De Venter asked him to take Emma outside the next morning because the Van De Venters would again be working.  [Williams Dep. at 107-08.]

The Van De Venters' yard is not enclosed with a fence.  [Williams Resp. to Req. for Admis. at 18-19; Van De Venters' Resp. to Req. for Admis. at 18-19.]  A dispute exists with respect to the Van De Venters' instructions to Mr. Williams.  Mr. Williams claims that Mr. Van De Venter showed him the retractable leash and instructed him on how to attach it to Emma's collar.  [Williams Dep. at 108-09, 111, 114; A. Van De Venter Dep. at 58-59.]  The Van De Venters claim that Mr. Williams was instructed not to walk the dog and that if he wanted to let Emma outside, he was to attach her collar to the chain connected to a stake in the ground near the door to the garage.  [A. Van De Venter Dep. at 54-55.][2] It is the Van De Venters' contention that on October 22, 2012, Mrs. Van De Venter attempted to instruct Mr. Williams on how to use the outdoor chain for Emma, but that Mr. Williams "would not listen and said he did not need instructions since he had handled dogs before."  [Dkt. No. 48 at 8 (citing A. Van De Venter Dep. at 70-71; J. Van De Venter Dep. at 39-40).]  Mr. Williams denies that he was instructed to put Emma on the chain outside and denies that he was told not to walk Emma.  [Williams Dep. at 109.]  It is undisputed that the Van De Venters did not ask Mr. Williams to provide food or water to Emma during

---

[2] Separate from the Incident, Mrs. Van De Venter was injured when Emma pulled on her leash causing Mrs. Van De Venter to hit her hand on the front porch post.  [J. Van De Venter Dep. at 30-33.]  Mr. Williams was aware that Mrs. Van De Venter suffered this injury and inferred from it that Emma was uncontrollable.  [Williams Dep. at 134.]

3

his visit.  [J. Van De Venter Aff. at ¶ 10; A. Van De Venter Aff. at ¶ 10.]  The Van De Venters also did not ask Mr. Williams to care for Emma (aside from the conversation regarding letting Emma outside, which is in dispute), nor did they pay or offer to pay Mr. Williams to care for Emma.  [*Id.*]

On October 23, 2012, Mrs. Van De Venter gave Emma food and water before leaving for work.  [J. Van De Venter Dep. at 44.]  Mr. Williams was at home by himself with Emma.  [A. Van De Venter Dep. at 53.]  Sometime in the morning, Mr. Williams, while lying in bed watching television, heard Emma scratching at the door.  [Williams Dep. at 112-13.]  Mr. Williams went downstairs, put the leash on Emma's collar and took Emma outside.  [*Id.* at 113.]  This task was performed by him more than once.  [*Id.* at 115.]

The second time that Mr. Williams took Emma outside, he took her away from the road towards the Van De Venters' garden.  [Williams Dep. at 121-22; Williams Interrog. Resp. at 3.][3]  While holding Emma's leash, Mr. Williams heard another dog bark.  [Williams Dep. at 123, 125.]  Emma pulled away from Mr. Williams causing him to fall on his right shoulder, which injury caused Mr. Williams intense pain (the "Incident").  [*Id.* at 125-27, 137.]

As a result of the Incident, Mr. Williams filed a lawsuit against the Van De Venters in the Monroe County Circuit Court, cause number 53C06-1308-CT-1435 (the "Underlying Suit").  In his complaint, Mr. Williams alleges the Van De Venters were

---

[3] The evidence shows that Mr. Williams wanted to keep Emma away from the road because the Van De Venters' last dog was killed when it was hit by a car.  [Dkt. No. 48 at 5 (citing Williams Dep. at 108, 120.]

negligent in failing to properly train, restrain and supervise Emma; for failing to warn him of Emma's dangerous propensities; for failing to instruct or warn him about the use of the retractable leash; for failing to provide an adequate leash for Emma; and for failing to exercise reasonable care for his safety while he was a guest at the Van De Venters' Home. Mr. Williams alleges that as a direct and proximate cause of the Van De Venters' negligence he suffered personal injuries, incurred medical expenses, pain and suffering, and other damages.  The Van De Venters seek to have their homeowners insurance policy cover any losses and the insurance company provide a defense to the suit filed by Mr. Williams.

### B.     The Van De Venters' Insurance Policy with American Family.

At the time of the Incident, the Van De Venters were insured by American Family pursuant to an Indiana Homeowners Policy for the residence at 6370 West May Road, Bloomington Indiana, policy number 13-BJ8536-01 ("the Policy").  The Policy extends the following liability coverage to the Van De Venters:

**COVERAGE D – PERSONAL LIABILITY COVERAGE**

**We** will pay, up to **our limit**, compensatory damages for which any **insured** is legally liable because of **bodily injury** or **property** damage caused by an **occurrence** covered by this policy.

**Defense Provision.**

If a suit is brought against any **insured** for damages because of **bodily injury** or **property damage** caused by an occurrence to which this policy applies, **we** will provide a defense at our expense by counsel of **our** choice. **We** will defend any suit or settle any claim for damages payable under this policy as we think proper.

5

**OUR** OBLIGATION TO DEFEND ANY CLAIM OR SUIT ENDS WHEN THE AMOUNT **WE** HAVE PAID FOR DAMAGES RESULTING FROM THE **OCCURRENCE** EQUALS **OUR LIMIT**.

[Policy at Liability Coverages – Section II, Coverage D – Personal Liability Coverage, page 9 of 16 (emphasis in original).]

The Policy defines "bodily injury" as "bodily harm, sickness or disease. It includes resulting loss of services, required care and death." [Policy at Definitions, paragraph 1, page 1 of 16.] "Occurrence" means "an accident, including exposure to conditions, which results during the policy period, in:" (a) bodily injury; or (b) property damage. [*Id.* at Definitions, paragraph 9, page 2 of 16.] The Policy defines an insured as follows:

**DEFINITIONS – INSURED**

a.   **Insured** means **you** and, if residents of **your** household:

  (1)   **your** relatives; and

  (2)   any other person under the age of 21 in **your** care or in the care of **your** resident relatives.

b.   Under Personal Liability and Medical  Expense Coverages, **insured** also means:

  (1)   Any person or organization legally responsible for a watercraft or  animal owned by any person included in paragraph a. to which Section  II Coverages apply. This does not include a person or organization using or having custody[4] of the watercraft or animal in the course of **business** or without **your** specific permission.

---

[4] "Custody" is defined by Webster's II New College Dictionary 280 (1995) and Black's Law Dictionary 441 (9th ed. 2009) as "[t]he act or right of guarding, esp. such a right granted by a court" and "[t]he care and control of a thing or person for inspection, preservation, or security", respectively.

[*Id.* at Definition, page 1 of 16 (emphasis in original).]  The Policy contains the following

exclusions from liability coverage:

> **Coverage D – Personal Liability and Coverage E – Medical Expense** do not apply to:

* * *

> 11. **Intra-insured Suits. We** will not cover **bodily injury** to any **insured**.

* * *

> 17. **Violation of Law. We** will not cover **bodily injury** or **property damage** arising out of:
>
>> a. violation of any criminal law for which any **insured** is convicted;
>>
>> b. violation of any building or housing code for which any **insured** is convicted; or
>>
>> c. violation of any criminal law for which any **insured** is not convicted due to mental incapacity.

* * *

> **Coverage D – Personal Liability** does not apply to:

* * *

> 4. **Punitive Damages. We** will not cover punitive or exemplary damages.

* * *

> **Coverage E – Medical Expense** does not apply to:

* * *

> 3. **Residents. We** will not cover **bodily injury** to any **insured** or other person, other than a **domestic employee,** regularly residing on any part of the **insured premises**.

[*Id.* at Exclusions – Section II, paragraphs 11, 17, pages 10 through 12 of 16 (emphasis in

original).]

## Summary Judgment Standard

Summary judgment is appropriate when the record before the Court establishes that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the Court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *Id.* at 255. When, as in this case, the parties have filed cross-motions for summary judgment, "'we construe the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made.'" *Cavin v. Home Loan Center, Inc.*, 531 F.3d 526, 528-29 (7th Cir. 2008) (quoting *Premcor USA v. Am. Home Assurance Co.*, 400 F.3d 523, 526 (7th Cir. 2005)). However, neither the "mere existence of some alleged factual dispute between the parties," nor the existence of "some metaphysical doubt as to the material facts," will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000) (internal citations omitted).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the

burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. *Id*. at 325; *Doe v. R.R. Donnelley & Sons, Co.,* 42 F.3d 439, 443 (7th Cir. 1994). Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994). But, if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. *Celotex,* 477 U.S. at 322*; Ziliak v. AstraZeneca LP,* 324 F.3d 518, 520 (7th Cir. 2003).

Courts are often confronted with cross-motions for summary judgment, as is the case here, because Rules 56(a) and (b) of the Federal Rules of Civil Procedure allow both plaintiffs and defendants to move for such relief. "'In such situations, courts must consider each party's motion individually to determine if that party has satisfied the summary judgment standard.'" *Midwest Title Loans, Inc. v. Ripley*, 616 F. Supp. 2d 897, 902 (S.D. Ind. 2009) (quoting *Kohl v. Ass'n of Trial Lawyers of Am.*, 183 F.R.D. 475 (D.Md.1998)). "When evaluating each side's motion the court simply 'construe[s] all inferences in favor of the party against whom the motion under consideration is made.'" *Morgan v. Fennimore*, Cause No. 1:09-cv-399-SEB-TAB, 2010 WL 5057418, at *1 (S.D. Ind. Dec. 3, 2010) (quoting *Metro. Life Ins. Co. v. Johnson,* 297 F.3d 558, 561–62 (7th Cir. 2002) (quoting *Hendricks–Robinson v. Excel Corp.,* 154 F.3d 685, 692 (7th Cir.1998))).

### Interpretation and Application of Insurance Policies

"An insurance policy is governed by the law of the principal location of the insured risk during the term of the policy," Indiana in this case. *Dunn v. Meridian Mut. Ins. Co.*,

836 N.E.2d 249, 251 (Ind. 2005). Contracts for insurance are subject to the same rules of interpretation as are other contracts. *Eli Lilly & Co. v. Home Ins. Co.*, 482 N.E.2d 467 (Ind. 1985). Construction of a written contract is a question of law for which summary judgment is appropriate where the terms of the contract are unambiguous and there is no genuine issue of material fact. *Trisler v. Indiana Ins. Co.*, 575 N.E.2d 1021, 1023 (Ind. Ct. App. 1991). "It is well-settled that an insurer bears the burden of proving that an exclusion applies. *Essex Ins. Co. v. Good Drinks, LLC*, Cause No. 2:12-CV-011-JD, 2013 WL 2425158 (N.D. Ind. June 4, 2013). [5]

### Analysis

Many of the facts relating to issues of insurance coverage are undisputed in this case. No dispute exists that an occurrence under the Policy resulted when Mr. Williams was injured on the Van De Venters' property by their dog. [Dkt. No. 51 at 8 (De Van Venter Br.); Dkt. No. 48 at 14-15 (American Family Br.).] It is undisputed that Mr. Williams suffered a "bodily injury" as defined by the Policy that triggers Part D of the Coverage (and Part E to the extent Mr. Williams seeks the payment of medical expenses).

---

[5] American Family recites Indiana law related to contract construction, interpreting insurance policies, and the enforcement of unambiguous provisions of an insurance policy. [Dkt. No. 48 at 11-13.] The parties agree to the language of the Policy and no serious arguments have been made that the Policy language is ambiguous. The Van De Venters advance a single sentence argument that "[a]n ordinary policyholder of average intelligence would not interpret the policy to make any person who cares for or even merely interacts with the homeowner's pet in any way to become 'legally responsible' for the pet, and thus, become an insured under the Policy." [Dkt. No. 51 at 20.] The Van De Venters' undeveloped argument is insufficient to demonstrate that the Policy is ambiguous. Any such argument has thus been waived. *See United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003) ("[W]e have repeatedly warned that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.").

The parties do not dispute that if Mr. Williams is an insured under the Policy that the intra-insured provision excludes the Incident from coverage.  The dispute here is limited to whether Mr. Williams meets the Policy's definition of an "insured" such that the intra-insured provision excludes coverage for the Incident.[6]  This outcome determinative issue turns on whether Mr. Williams was "legally responsible"[7] for Emma at the time he was injured.

## A.    Persons "Legally Responsible" Under the Policy.

The Policy defines "insured" with regard to Personal Liability and Medical Expense Coverage to mean not only the named insureds (the Van De Venters), but also "any person . . . legally responsible for a[n] . . . animal owned by any person included in [the prior

---

[6] American Family submits the affidavit of Josephine Gee, a staff attorney for American Family licensed to practice law in Wisconsin.  [Dkt. No. 49-6 ("Gee Aff.").]  Ms. Gee laid a foundation for the Policy [*Id.* at ¶¶ 6-7], but she also sets forth facts for which she does not demonstrate having personal knowledge.  [*Id.* at ¶ 8 ("At the time of the incident . . . David Williams was the only adult on the premises and he had the Van De Venters' dog Emma on a leash he was holding.").]  Such statements are inadmissible.  Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").  Ms. Gee also draws legal conclusions which are inadmissible.  [*See id.* at ¶ 9 (concluding that Mr. Williams was a "person legally responsible for the dog" and therefore an "insured" under the Policy); ¶ 10 (stating that because "both the Van de Venters and David Williams would be insured under this policy" the intra-insured suit provision applies and excludes Mr. Williams claims from coverage).]  "[L]egal argumentation is an expression of legal opinion and is not a recitation of a 'fact' to which an affiant is competent to testify, legal argument in an affidavit may be disregarded.'"  *Pfeil v. Rogers*, 757 F.2d 850, 862 (7th Cir. 1985); *Jimenez v. Chicago*, 732 F.3d 710, 721 (7th Cir. 2013) ("As a general rule, accordingly, an expert may not offer legal opinions.").  Although American Family argues that Ms. Gee's opinions "would help the jury", the case is not before the jury.  [*See* Dkt. No. 64 at 2-5.]  As such, we disregard Ms. Gee's statements that are unsupported by personal knowledge as well as her legal opinions.

[7] The Van De Venters' contend that "legally responsible" is synonymous with "liable." [Dkt. No. 51 at 14.]  American Family does not object.  [Dkt. No. 54 at 11.]

definition of "insured", i.e., the Van De Venters]."  American Family argues that Mr. Williams was "legally responsible" for Emma at the time of the Incident and, as a result, Mr. Williams is an "insured" under the Policy and the intra-insured exception precludes coverage for the Incident.  The Van De Venters argue that Mr. Williams was not "legally responsible for Emma" and, as a result, he was not an insured under the Policy and the intra-insured provision of the Policy does not provide an exception to coverage.

### 1. Keeper Common Law.

According to American Family, Mr. Williams was a "keeper of the dog" as defined by Indiana law at the time of the Incident which made him "legally responsible" for Emma. [Dkt. No. 48 at 18.]  Mr. Williams's status as a "keeper" is significant because a dog owner's duty to keep the animal confined extends to a keeper.  *Blake v. Dunn Farms, Inc*., 413 N.E.2d 560, 563 (Ind. 1980); *Morehead v. Dietrich*, 932 N.E.2d 1272, 1279 (Ind. Ct. App. 2010).  It is oft-repeated in Indiana case law:

> It is well-established that the keeper of an animal has a duty to provide for restraining and confinement of that animal.  *Blake v. Dunn Farms* (1980), 274 Ind. 560, 413 N.E.2d 560, 563.  Under our common law, all dogs, regardless of breed or size, are presumed to be harmless, domestic animals. *Royer v. Pryor* (1981), Ind. App., 427 N.E.2d 1112, 1117.  Nonetheless, the owner of a dog is bound to know the natural propensities of dogs, and if these propensities are the kind which reasonably might be expected to cause injury, the owner must use reasonable care to prevent such injuries from occurring. *Alfano v. Stutsman* (1984), Ind. App., 471 N.E.2d 1143, 1145.  An owner or keeper who fails to exercise such reasonable care may be liable in negligence for the manner of keeping and controlling the dog.  *Burgin v. Tolle* (1986), Ind. App., 500 N.E.2d 763, 766.

*Ross v. Lowe*, 619 N.E.2d 911, 914 (Ind. 1993).  "In addition, the keeper of an animal has a duty to provide for the restraining and confinement of that animal and may become liable

for damages the animal causes when the keeper is otherwise negligent in the manner of its keeping and control." *Vetor by Weesner v. Vetor*, 634 N.E.2d 513, 515 (Ind. Ct. App. 1994) (citations omitted); *Blake*, 413 N.E.2d at 563.[8]

According to Indiana law, "[a] keeper need not be the owner of an animal." *Williams v. Pohlman*, 257 N.E.2d 329, 331 (Ind. Ct. App. 1970); *Graham v. Payne*, 24 N.E. 216, 217 (Ind. 1890) (referring to the keeper as "the person who is chargeable with the duty of keeping the beast under safe restraint"). A keeper is "one who exercises control over an animal on his premises with knowledge of its presence, whether he be an owner, or a bailee." *Pohlman*, 257 N.E.2d at 331. The Corpus Juris Secundum defines a "keeper" as "the one who harbors or protects" an animal. 3 C.J.S. *Animals* § 165(b) at 1266.

---

[8] "It is for the court to determine if a legal relationship exists from which a duty of care arises." *Vetor*, 634 N.E.2d at 515, n.3 (citing *Miller v. Griesel*, 308 N.E.2d 701 (Ind. 1978)). "However, while it is clear that the trial court must determine if an existing relationship gives rise to a duty, it must also be noted that a factual question may be interwoven with the determination of the existence of a relationship, thus making the existence of a duty a mixed question of law and fact, to be ultimately resolved by the jury." *Id.* (citations omitted). Here, the parties agree that no material facts exist to preclude the entry of summary judgment. [*See* Dkt. No. 64 at 2 (American Family noting that the Van De Venters admit that the "underlying disputes of fact regarding the instructions that were given to Williams the night before his injuries" are "not material as to whether summary judgment may be entered" and encouraging us to consider American Family's facts as undisputed).] We agree. No dispute exists that Mr. Williams took Emma outside with the Van De Venters' knowledge that he would be doing so. The only dispute exists with respect to whether Mr. Williams was to use the leash or chain when taking Emma outside. This dispute is irrelevant for determining whether Mr. Williams had a duty as a keeper that made him legally responsible for Emma.

The Van De Venters focus on two components of the *Pohlman* definition of a keeper – that the keeper must exercise control over the animal *on his premises*[9] and that the keeper must *harbor or protect* the animal.  [Dkt. No. 51 at 15.]  Contending that Mr. Williams did neither of those acts with respect to Emma, the Van De Venters contrast this case with *Vetor*, 634 N.E.2d at 515.  In *Vetor*, the grandparent-defendants owned the property on which their son's dog was allowed to roam.  *Id.*  The grandparents fed and watered the dog and gave it affection.  *Id.*  The court found that the grandparents intentionally caused the dog to come to their home and "assumed at least some measure of responsibility for the dog's care and were providing it refuge, thereby making them a harborer or keeper of the animal."  *Id.*  The Van De Venters argue that because Emma was not on Mr. Williams's property and Mr. Williams did not feed or water Emma, he was unlike the grandfather in *Vetor* and thus not a keeper of Emma.[10]

American Family rejoins citing several cases interpreting a similar insurance policy exclusion provision (that a person "legally responsible" for an animal owned by an insured

---

[9] The Van De Venters cite to *Tucker v. Duke*, 873 N.E.2d 664, 666 (Ind. Ct. App. 2007) as an example of cases applying keeper liability when a dog takes refuge on the keeper's property or when the keeper has taken responsibility for the dog while on the keeper's property.  [Dkt. No. 51 at 15.]  *Tucker* does not provide guidance here because it was undisputed in that case that the property-owner defendant was a "keeper" of the dog at issue.  *Tucker*, 873 N.E.2d at 669, n.7.

[10] The Van De Venters point to *Zwingle v. Love*, a New York case where the court found that "[t]he fact that defendant, while visiting her son [the dog's owner], may have called the dog, given it commands or let it in and out of the premises would not be enough to constitute her as its harborer or keeper."  37 A.D. 2d 874 (N.Y. App. Div. 1971).  *Zwingle* is a three paragraph decision with minimal factual information and legal analysis.  It is unclear from the facts whether defendant was present at the time of the incident.  We find *Zwingle* unpersuasive as it does not include enough detail to compare it to the facts before us and in any event it is no longer the law in New York.  *See Strunk v. Zoltanski*, 468 N.E.2d 13 (N.Y. 1984).

is also considered an insured) and those cases find that someone in possession, custody, or control of a dog would be legally responsible for the dog.  [Dkt. No. 48 at 16.][11]  Although none of these cases is based on Indiana law, they provide guidance to our fact-sensitive determination.  In *United Services Automobile Association v. State Farm Fire & Casualty Co.*, 110 P.3d 570 (Ok. Ct. App. 2004), the father-in-law of the property owner opened a gate that fenced in the property owner's horse.  The horse escaped and was involved in a collision with a car.  The court found the father-in-law legally responsible for the horse.  This conclusion was based on the father-in-law's possession of a key to the padlocked gate where the horses were kept and the owner and father-in-law's shared understanding that the father-in-law was expected to look after the horses.  *Id.* at 572-73.  The court found that the father-in-law "was in charge of the household" and "had the power to act to prevent the escape of the horse."  *Id* at 573.  As a result, the court found him "legally responsible" for the horse during the time he was on the property.  *Id.*

American Family also relies on *Malik v. American Family Mutual Insurance Company*, 625 N.W.2d 640 (Wis. Ct. App. 2001), which considered the same policy exclusion here.  The defendant, Malik, was caring for the named insured's dog while the

---

[11] American Family cites to *Boettger v. Early American Insurance Company* [Dkt. No. 48 at 16]; however the court in that case concluded that the landlord was not liable for the actions of his tenant's dog which it neither owned nor controlled – far different than the facts here where American Family argues that a visitor could be liable for the owner's dog.  469 So.2d 495 (La. Ct. App. 1985).  American Family also cites *Burglass v. U.S. Fidelity & Guaranty Co.* [Dkt. No. 48 at 16]; however, in that case the defendant was a co-owner of the house even though the named insurer no longer lived there.  427 So.2d 596 (La. Ct. App. 1983).  Because the defendant had possession, custody, and control of the premises and the dog had been the family pet for over six years, the court found her to be in "possession, custody and control of the dog."  *Id.* at 598.  The facts in *Burglass* are unrelated to those in this case.

owner was on vacation. Malik was watching the dog at her own house and not the house of the dog's owner when she was injured by the dog. *Id.* at 642. The court found that Malik was a keeper of the dog: she was responsible for the dog and it was in her custody. *Id.* at 646. Consequently, the court found Malik to be an insured under the policy and the intra-insured provision excluded her claim from coverage. *Id.*

Finally, American Family cites *Van Kleek v. Farmers Insurance Exchange*, 857 N.W.2d 297 (Neb. 2014). In that case, Jennifer Van Kleek agreed to watch the Chapmans' dog while the Chapmans were out of town. *Id.* at 299. Van Kleek stayed at the Chapmans' house for four days and was the only person in the home during that period. *Id.* She was responsible for feeding, watering, and letting the dog in the backyard. *Id.* The dog was not allowed outside the fenced-in area of the yard. *Id.* On the fourth day, the dog bit Van Kleek on the lip, requiring reconstructive surgery. *Id.* Applying a "custody, control, or possession" definition of "legally responsible," the court considered several of the cases cited herein and concluded that Van Kleek was an insured under the policy because she was legally responsible for the Chapmans' dog and granted summary judgment for the insurer. *Id.* at 740. The court reasoned:

> The control Van Kleek exercised over D.J. obligated her to exercise care to prevent unreasonable risks of harm to third parties from D.J.'s behavior. Van Kleek testified that she was responsible for feeding, watering, and letting D.J. in and out of the house while the Chapmans were away. She also assumed that if D.J. got loose, she "would have to go find him," and she testified that she would have sought veterinary care if D.J. became sick. Van Kleek alone exercised control over D.J.'s position relative to the outside world. That she did not breach a duty of care by, for example, carelessly leaving the gate open or bringing D.J. into "the public domain where third parties reside," does not mean that she owed no duty.

16

*Id.* at 739-40.

The parties have presented no cases, and we could find none, with a fact pattern identical to the facts before us.  The cases collected by the parties represent a continuum of factual scenarios with which we only can compare the facts of this case.  On one end of the spectrum we have *Vector* – the case in which the grandparents cared for a dog on their own property, encouraging the dog to remain on their property.  These facts easily lead to a conclusion that the grandfather was a keeper of the dog.  Changing the facts to reflect that the father-in-law was not on his own property and yet was determined to be a keeper of the owner's horses, the court in *United Services* considered the owner and keeper's understanding of the care to be provided to the horses and the keeper's access to the property.  Somewhere in the middle of this decisional continuum is *Malik*, where plaintiff was found to be a keeper of the dog for which she had cared in her own home and at the request of the owners.  *Van Kleek* involves a keeper who watched the dog on her own property for several days under an agreement to water, feed, and care for the dog.

In the absence of any Indiana precedent on point, we reviewed the holding in *Neztsosie v. Meyer*, 883 P.2d 920, 921-22 (Utah 1994), which is contrary to that in *Vetor*. In *Neztosoie*, the plaintiff was injured when attacked by a dog owned by defendants, the Stewarts.  *Id.* at 921.  The Stewarts were away from home for the weekend and had asked defendant Meyer to check on their dog who was chained up at the back of their home, though with sufficient food to last for several days.  *Id.*  The plaintiff sued Mr. Meyer as the dog's keeper under Utah's strict liability statute for persons owning or keeping a dog.

17

*Id.* Utah's Supreme Court found Mr. Meyer was not a keeper of the dog, based on the

following reasoning:

> We hold that the term "keeper," as it is used in section 18-1-1, means more
> than merely checking to see if a dog has sufficient food and water for a
> limited time. *See McEvoy v. Brown,* 17 Ill.App.2d 470, 150 N.E.2d 652, 656
> (1958). It is difficult to frame a universal definition of keeper, but the
> assumption of custody, management, and control is intrinsic to the definition.
> The term implies
>
> > the exercise of a substantial number of the incidents of
> > ownership by one who, though not the owner, assumes to act
> > in his stead . . . . One becomes the keeper of a dog only when
> > he, either with or without the owner's permission, undertakes
> > to manage, control, or care for it as dog owners in general are
> > accustomed to do.
>
> *Raymond v. Bujold,* 89 N.H. 380, 199 A. 91, 92 (1938); *Gilbert v.
> Christiansen,* 259 N.W.2d 896, 897 (Minn. 1977) (citing *Verrett v. Silver,*
> 309 Minn. 275, 244 N.W.2d 147, 149 (1976)); *see also Hancock v. Finch,*
> 126 Conn. 121, 9 A.2d 811, 812 (1939); *Brown v. Bolduc,* 29 Mass. App.
> 909, 556 N.E.2d 1051, 1052-53 (1990). Meyer exercised no control or
> dominion over the dog so as to make him a keeper under section 18-1-1, and
> the trial court's grant of his motion for summary judgment was correct.

*Id.* at 921-22.

We regard the court's analysis in *Neztosie* persuasive. The facts before us are most

similar to those in *Neztsosie* and they are most unlike the facts of *Vetor.* Mr. Williams was

not caring for Emma at his home and did not feed or water her. There is no evidence of a

shared understanding that Mr. Williams was to care for Emma (even assuming that the Van

De Venters specifically asked Mr. Williams to take Emma outside using the chain in the

yard). Mr. Williams's presence at the Van De Venters' home was not for the purposes of

caring for Emma. His interactions with and responsibility for Emma were minimal and

18

incidental.  Mr. Williams did not provide either the kind or scope of care to Emma that the Van De Venters would deliver.

American Family's summary of the facts reveals the tenuous thread on which it attempts to hang its theory of keeper liability regarding Mr. Williams: "Williams was watching and overseeing Emma as she went to use the bathroom outside; guarded her from going toward the road; and exercised control and/or restraint through the leash from her going toward the road." [Dkt. No. 64 at 12.]  Said more succinctly, Mr. Williams simply took Emma outside on a leash on one day while the Van De Venters were at work.  Mr. Williams's actions did not make him a keeper of Emma.  His solitary interaction does not rise to the level of "keeper" under Indiana law so as to make him "legally responsible" for Emma.

Our conclusion is consistent with the public policy argument advanced by the Van De Venters.  They argue:

> It is not reasonable to expect an overnight guest, who takes a homeowner's dog outside, with or without permission, to become legally responsible for the dog.  If this was [sic] the case, the Policy would exclude every guest of a homeowner who fed, provided water, walked, or otherwise cared for the homeowner's dog in any way.

[Dkt. No. 51 at 19.]  We share this view.  An owner does not discharge its legal responsibility and a visitor does not assume a legal responsibility when the visitor simply takes the owner's dog outside for a brief period of time.  Such a limited scope of care does not render the visitor a "keeper" who is "legally responsible" for the dog.

2.     **Bailment.**

American Family's alternative argument is that a bailment can be created to care for a dog and that a bailee can be held liable as a keeper of the animal. [Dkt. No. 48 at 21 (citing *Wilson v. Reynolds*, 13 N.E.2d 218 (Ind. 1938); *Pohlman*, 257 N.E.2d at 331-32).] The cases cited by American Family, however, are inapposite. In *Wilson*, the bailment at issue was a truck driver delivering a dog to the appellant's kennels. 13 N.E.2d at 220-21. American Family's contention overreaches when based on *Wilson*; "[a] bailment can be created to care for a dog" but under very different circumstances. [Dkt. No. 64 at 14.] Likewise, the bailment in *Pohlman* arose when the keeper had been permitted to take a dog for a weekend on a trial basis in an adoption process. 257 N.E.2d at 331-32. The facts of these two cases are plainly unrelated to those before us.

Generally speaking, a "bailment is an express or implied agreement between a bailor and a bailee in which the bailee is entrusted to accomplish a specific purpose with the bailor's personal property; when the purpose is accomplished, the property is returned to the bailor." *Kottlowski v. Bridgestone/Firestone, Inc.*, 670 N.E.2d 78, 82 (Ind. Ct. App. 1996). The Van De Venters stress that they did not leave Emma with Mr. Williams for a specific purpose and that it was not the purpose of Mr. Williams's visit in their home to care for Emma. [Dkt. No. 60 at 12.]

The facts before us establish that Mr. Williams did not take sole possession of Emma and then return that possession to the Van De Venters. American Family's tortured analysis fizzles in light of the fact that Emma was never "delivered to the exclusive possession and custody of Williams." [*See* Dkt. No. 54 at 16.] Emma was left behind in

20

the Van De Venters' home while they were away at work.  Mr. Williams's brief and incidental presence in the Van De Venters' home is not consistent with his taking possession or control over Emma as would be true of a "keeper" of her.  Moreover, no evidence indicates an intent on the part of the parties here to create a bailment and no legal precedent establishes or recognizes a bailment based on a houseguest's letting the owner's dog outside.  We have no difficulty concluding that Mr. Williams was never a bailee of Emma.

### 3.   Monroe County and Bloomington Ordinances and Indiana Code.

The parties cite local ordinances and the Indiana Code to advance their respective positions with respect to Mr. Williams's legal responsibility for Emma at the time of the Incident.  American Family argues that because Mr. Williams was the only individual that could have been liable under these statutes at the time of the Incident (because he was holding Emma on a leash), he was "legally responsible" for Emma.  American Family contends that Mr. Williams would have been liable to others had Emma injured someone at the time of the Incident and Mr. Williams would have been an insured under the Policy.  Likewise, they claim, Mr. Williams would have been liable to the Van De Venters if something had happened to Emma when he selected the method of confinement.[12]  The

---

[12] American Family cites several cases in which negligence was established based on the method of confinement, *Weaver v. Tucker*, 461 N.E.2d 1159, 1161 (Ind. Ct. App. 1984); *Cochran v. Phillips*, 573 N.E.2d 472, 474 (Ind. Ct. App. 1991), and that failure to restrain or control a dog using reasonable care to prevent the dog from harming another in violation of a municipal ordinance constitutes negligence per se, *Plesha v. Edmonds*, 717 N.E.2d 981 (Ind. Ct. App. 1999); *Burgin v. Tolle*, 500 N.E.2d 763 (Ind. Ct. App. 1986); *Cook v. Whitsell-Sherman*, 771 N.E.2d 1211 (Ind. Ct. App. 2002), *vacated* 796 N.E.2d 271 (Ind. 2003).  [Dkt. No. 48 at 20-21.]  In all of these cases, however, the issue of liability involved the dog's *owner*.

Van De Venters, on the other hand, maintain that these laws demonstrate that only Emma's owner can be found liable for the offenses described therein.

Indiana Code 15-20-1, *et seq*. imposes liability on a dog's owner when the dog bites a person without provocation. [Dkt. No. 51 at 16.] According to the Van De Venters, "[u]nder this statute, the owners, the Van De Venters, not Williams, are strictly liable ("legally responsible") for Emma's actions if she bites a person, protected by the above statute." [*Id.*] Indiana Code § 15-20-1-2 defines "owner" to include those who "possess[], keep[], or harbor[] a dog."[13] Citing the statutory definitions of each of these words, the Van De Venters argue that Mr. Williams did not provide lodging or shelter to Emma, did not hold her as his own to the exclusion or others, and did not care for or tend to Emma. Consequently, according to the Van De Venters, Mr. Williams would not be found liable if Emma bit someone.

We agree with the Van De Venters' conclusion, which is also consistent with our findings above, that Mr. Williams was not a "keeper" of Emma at the time of the Incident. Although Mr. Williams "was attempting to control and restrain Emma at the time of the [I]ncident" [Dkt. No. 48 at 9 (citing Williams' Resp. to Request for Admis. at 11-12)], this act hardly qualifies Mr. Williams as someone possessing, keeping, or harboring a dog pursuant to Indiana Code § 15-20-1-2.

---

[13] The Van De Venters also point to Indiana Code § 15-20-2-1 related to liability if a dog kills or injures livestock. [Dkt. No. 51 at 17.] Only two cases in Indiana have applied this statute – one case related to joint liability for dogs owned by different persons and the other case considered the owner's knowledge of the propensity of the dog to injure livestock as a factor in the scope of the reasonable care obligation of the owner or keeper. *See Puckett v. Miller*, 381 N.E.2d 1087 (Ind. Ct. App. 1978); *Denny v. Correll*, 9 Ind. 72 (1857).

The Bloomington Municipal Code Ordinance requires all animals, except cats to "be kept under restraint" securing the "animal by leash or lead or confining it" to the real property of the owner.  Bloomington Municipal Code § 7.01.010.[14]  An "owner/guardian" is defined as "a person owning or harboring one or more animals for a period of longer than twenty-one days."  *Id.*  Code § 7.24.040 provides:  "(a) Any animal control officer may issue to any person in violation of this chapter a notice of ordinance violation.   The penalty established in section (b) of this section may, at the discretion of the animal owner/guardian, be paid to the city of Bloomington . . . ."  *Id.*

Similarly, the Monroe County Code provides:

440-12. At Large Dog, Costs for Removal and Storage of Any At Large Animal

(A) An owner shall not allow his dog(s) to travel or roam beyond his premises unless under restraint.[15]  This section does not apply to dogs when engaged in lawful hunting, accompanied by the owner or custodian or any other activity expressly permitted by state law.

(B) A person[16] who violates this section commits a Class E ordinance violation unless the animal is an at-large dog that is intact (has not been spayed or neutered and is over the age of six (6) months), which is a Class D ordinance violation. If, however, within ten (10) days of the violation, the dog owner submits to the Monroe County Animal Management Officer a receipt or a verified statement from a licensed veterinarian which

---

[14] The Van De Venters argue that the Bloomington Municipal Code does not apply because their property is outside the city limits of Bloomington.  [Dkt. No. 60 at 12.]  We need not address whether this Code applies to the Van De Venters because it does not support a conclusion that Mr. Williams was legally responsible for Emma at the time of the Incident.

[15] Restraint is defined as "securing of an animal by a leash or lead or confining it within the real property owned, lawfully occupied or controlled by its owner."  Monroe County Indiana Code § 440-1.

[16] "Person" is defined to mean "any individual."  *Id.*

23

> demonstrates that the dog has been spayed or neutered, then the violation will
> be reduced to a Class E ordinance violation.

Monroe County Code § 440-12; *see also id.* § 440-17 (providing that a "domestic pet's owner who fails to exercise due care and control of his animal, as prescribed in this section, commits a Class E ordinance violation for the first offense and a Class D ordinance violation for the second and subsequent offenses"). "Owner" is defined in the code as "any person owning, keeping or harboring one (1) or more animals." *Id.* at § 440-1. "Harboring" is defined as "the actions of any person that permit any animal habitually to remain, lodge, or to be fed within his home, enclosure, yard or place of business or on any premises where such person resides or that he controls. An animal shall be presumed to be harbored if it is fed or sheltered for three (3) consecutive days." *Id.*

American Family concludes that because the above-cited Codes including citations to "any person" for failing to restrain an animal, Mr. Williams was "any person" and thus "legally responsible" for Emma at the time of the Incident since he was the only individual that *could* have been liable for a violation at the time. [Dkt. No. 48 at 17.] The Van De Venters rejoin that when read as a whole, the Codes apply only to *owners* of dogs because it is "an owner" who has the obligation to ensure that his dog not travel or roam beyond his premises unless under restraint. [Dkt. No. 51 at 17-18; Dkt. No. 60 at 10.] The Van De Venters further argue that the language of the Codes penalizing "any person" for violations must be read in the context of the owner's obligations. Arguing that Mr. Williams was not Emma's owner, the Van De Venters conclude that Mr. Williams would

24

not be "legally responsible" for a violation of the above-referenced code sections.  [Dkt. No. 60 at 11.]

We agree with the Van De Venters' interpretation(s) of Monroe County Code § 440-12 and the Bloomington Code of Ordinances § 7.24 based on the facts of this case.  Reading these laws as a whole, they set forth requirements imposed on dog owners (and harborers).  We do not view Mr. Williams as "legally responsible" for Emma based on these laws.  "Statutes relating to the same general subject matter are *in pari materia* and should be construed together so as to produce a harmonious statutory scheme."  *Halifax Fin. Group, L.P. v. Nance*, 813 N.E.2d 805, 807 (Ind. Ct. App. 2004).  American Family acknowledges that "[w]hile the Codes may refer to the owner's duty to restrain a dog, each of the Codes also unambiguously provided that any person may be liable for a violation of the Code."  [Dkt. No. 64 at 10.]  American Family's argument is a non sequitur.  A person cannot be liable absent a duty or legal obligation which he failed to perform.  The owner possesses the duty under these Code provisions and it is only the owner who can be liable for violations of those duties.

**B.    Remaining Insured Provisions.**

As the parties discuss, even a person legally responsible for an animal owned by the Van De Venters could not be an "insurer" under the Policy if he or she took custody of Emma without the Van De Venters' specific permission.  [Policy at Definition, page 1 of 16 ("This does not include a person . . . having custody of the . . . animal . . . without your specific permission.").]  Because we have determined that Mr. Williams was not "legally

25

responsible" for Emma, we need not address whether Mr. Williams had specific permission to take custody of Emma under the Policy exception.

Likewise, the parties do not dispute that if Mr. Williams is an insured, the intra-insured exclusion precludes coverage [Dkt. No. 64 at 6 (citing Dkt. No. 51 at 12)]; however, having determined that Mr. Williams is *not* an insured, the intra-insured exclusion provision is inapplicable.

**C.    Duty to Defend.**

The Van De Venters admit that "[a]t all times during the Underlying Suit, [they] have been represented by counsel hired by American Family."  [Dkt. No. 51 at 5.]  That defense was made under a reservation of rights.  [Dkt. No. 54 at 3, ¶ 19.]  American Family seeks to extinguish its duty to defend through its declaratory judgment action.

American Family's motion for summary judgment related to its duty to defend is based entirely on its position that the Van De Venters' "claim is patently outside of the risk covered by the policy."  [Dkt. No. 48 at 24.]  In its brief in support of its motion for summary judgment, American Family argues that it "is entitled to summary judgment as a matter of law that it has no duty to defend, let alone indemnify, the Van De Venters for the claims asserted by Williams – another insured by definition under the policy."  [*Id.*] American Family contends that its duty to defend "only applies when the risk is insured against" and "since there is no coverage under this policy, there is no duty to defend or duty to indemnify."  [Dkt. No. 54 at 23-24; Dkt. No. 64 at 17-18.]

American Family's argument, stated in the reverse, acknowledges its duty to defend applies where coverage exists under the Policy.  Repeatedly the parties have parroted that

26

"an insurer's duty to defend its insured against suit is broader than its coverage liability or duty to indemnify." *Westfield Ins. Co. v. Sheehan Constr. Co.*, 575 F. Supp. 2d 956, 959 (S.D. Ind. 2006). "Because the duty to defend question usually does not depend on the outcome of the underlying action, there is no barrier to resolving that question before the underlying litigation is resolved. *Id.* (citing *Nationwide Ins. v. Zavalis*, 52 F.3d 689, 695 (7th Cir. 1995)). "As the United States Court of Appeals for the Seventh Circuit has noted, a 'defense may be required even if there never turns out to be any liability to indemnify.'" *Id.* (citing *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003)). Having determined that coverage exists under the Policy for the Incident, we hold that American Family has both a duty to indemnify (if any such liability exists at the conclusion of the Underlying Action) and a duty to defend the Van De Venters in the Underlying Action.

## Conclusion

David Williams, a guest at the Van De Venters' home, was not legally responsible for the Van De Venters' Labrador, Emma, when he took Emma into the backyard on a leash and was subsequently injured by her uncontrolled behavior. Mr. Williams was not a "keeper" subject to the same liability as would be a dog owner, and the applicable Codes (Indiana, Monroe County, and Bloomington) do not provide a legal basis on which to hold Mr. Williams legally responsible for Emma. Finally, no bailment was created between the Van De Venters and Mr. Williams giving rise to a duty of care for Emma. Consequently, Mr. William was not an "insured" under the Policy and the intra-insured exception to

coverage is inapplicable.  Furthermore, American Family's duty is not discharged to defend the Van De Venters in the Underlying Action.

We GRANT Defendants Anthony and Jeanette Van De Venter's Motion for Summary Judgment [Dkt. No. 50] and DENY Plaintiff American Family Mutual Insurance Company's Motion for Summary Judgment [Dkt. No. 47].   Judgment shall enter accordingly.

Date:   _9/30/2015_                    _____
                                       SARAH EVANS BARKER, JUDGE
                                       United States District Court
                                       Southern District of Indiana

Distribution:

Christopher D. Wyant
BROWN TOMPKINS LORY & MASTRIAN
cwyant@btlmlaw.com

Christine L. Bartlett
FERGUSON & FERGUSON
clb@ferglaw.com

Megan J. Schueler
FERGUSON & FERGUSON
mjs@ferglaw.com

Robert Scott O'Dell
O'DELL & ASSOCIATES, P.C.
rodell@odell-lawfirm.com